COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Elder and Overton
Argued at Richmond, Virginia


ROBERT MASON, A/K/A
 ANTHONY BERNARD SMITH
                                         MEMORANDUM OPINION[*] BY
v.       Record No. 0499-96-4            JUDGE LARRY G. ELDER
                                            JUNE 24, 1997
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                     William L. Winston, Judge

          (Joseph H. Beale, on brief), for appellant.

          Michael T. Judge, Assistant Attorney General
          (James S. Gilmore, III, Attorney General, on
          brief), for appellee.


     Robert K. Mason, a/k/a Anthony Bernard Smith (appellant)

appeals his conviction of habitual petit larceny.  He contends

that the trial court erroneously denied his motion for a mistrial

because one of the impaneled jurors lacked sufficient proficiency

with the English language.  He also contends that the trial court

erred when it used leading questions to inquire about the juror's

ability to understand English.  For the reasons that follow, we

affirm.

                               I.

                             FACTS

     Appellant was charged with petit larceny, a third or

subsequent offense.  Prior to his trial, the trial court and the

_____
     [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

parties conducted a <u>voir</u> <u>dire</u> of the members of the jury panel, during which the jurors were not asked about their proficiency with the English language. While the jury was deliberating appellant's sentence, appellant's counsel moved for a mistrial because he had learned that "one of the jurors' native language is not English and . . . that she has great difficulty understanding English." In response to appellant's motion, the trial court recalled the jury from the jury room and asked the juror in question (Juror X) about her experience with English. During their brief exchange, Juror X answered all of the trial court's questions responsively. She stated that, although she does not speak English perfectly, she reads English and regularly converses in it at work. She also stated that another juror translated "some things" to her in Spanish during the deliberations. The trial court denied appellant's motion for a mistrial, reasoning that it "was guided . . . by [Juror X's] ability to converse with me."

The jury resumed deliberating and sentenced appellant. After the jury was excused, appellant's counsel renewed his motion for a mistrial. The trial court again denied the motion.

II.

## MOTION FOR MISTRIAL

Appellant contends that the trial court violated his constitutional right to an impartial jury when it denied his motion for a mistrial because Juror X lacked sufficient

proficiency with the English language to comprehend the evidence and arguments presented at trial.  We disagree.

In criminal proceedings, a defendant has a right to a trial by an "impartial jury."  See U.S. Const. amends. VI, XIV; Duncan v. Louisiana, 391 U.S. 145, 149, 88 S. Ct. 1444, 1447, 20 L.Ed.2d 491 (1968); Va. Const. art. I, § 8.  Neither this Court nor the Supreme Courts of the United States and Virginia have previously addressed the issue of whether the constitutional right to an impartial jury includes the right to a jury proficient in the English language.

Generally, a criminal defendant's right to an impartial jury includes the right to have his case tried by jurors who are able to understand the evidence and the law and to arrive at an independent judgment as to guilt or innocence.

> Fundamental to the right of an impartial jury is the requirement that jurors be competent and qualified.  "[T]rial by jury necessarily requires a jury which is able to comprehend and intelligently resolve the factual issues submitted to its verdict."

Commonwealth v. Susi, 394 Mass. 784, 786–87, 477 N.E.2d 995, 997 (1985) (quoting Rabinowitz v. United States, 366 F.2d 34, 92 (5th Cir. 1966) (Coleman, J., concurring in part and dissenting in part)); see also State v. Gallegos, 88 N.M. 487, 488–99, 542 P.2d 832, 833–34 (N.M. Ct. App. 1975); Commonwealth v. Brown, 231 Pa.Super. 431, 435–36, 332 A.2d 828, 831 (1974); State v. Berberian, 118 R.I. 413, 418, 374 A.2d 778, 781 (1977); State v.

Hurd, ___ S.C. ___, ___, 480 S.E.2d 94, 97 (S.C. Ct. App. 1996); State v. Turner, 186 Wis.2d 277, 284, 521 N.W.2d 148, 151 (Wis. Ct. App. 1994). "[T]he Due Process Clause protects a defendant from jurors who are actually incapable of rendering an impartial verdict, based on the evidence and the law." Peters v. Kiff, 407 U.S. 493, 501, 92 S. Ct. 2163, 2168, 33 L.Ed.2d 83 (1972) (plurality opinion); see also Smith v. Phillips, 455 U.S. 209, 217, 102 S. Ct. 940, 946, 71 L.Ed.2d 78 (1982) (stating that due process requires "a jury capable and willing to decide the case solely on the evidence before it").

Applying this principle, we hold that a juror's lack of proficiency with the English language renders the juror constitutionally disqualified from jury service if the juror is actually incapable of substantially comprehending the evidence and arguments presented at trial. See Gallegos, 88 N.M. at 489, 542 P.2d at 834 (stating that "a juror who does not possess a working knowledge of English would be unable to serve because he cannot possibly understand the issues or evaluate the evidence to arrive at an independent judgment as to the guilt or innocence of the accused"); 50A. C.J.S. Juries § 290 (1997) (stating that the requirement of English proficiency "merely requires the juror to understand substantially the testimony and argument"). What has been said about the competency of a juror who is hard of hearing also applies to jurors who are unable to understand the language in which court proceedings occur:

> [A] juror cannot be aware of what she cannot
> hear.  Thus, the juror here could not
> participate in meaningful discussions during
> the deliberative stage of the trial nor
> decide the case intelligently.  The effect of
> the juror's inability to hear the testimony
> was tantamount to the juror not being in
> attendance for . . . the trial, thus denying
> the defendant the right to a jury of twelve.

People v. Trevino, 826 P.2d 399, 401 (Colo. Ct. App. 1991).
As with other decisions regarding the competency of jurors to serve, whether or not a juror demonstrates a lack of proficiency with the English language is committed to the sound discretion of the trial court.  See Martin v. Commonwealth, 221 Va. 436, 445, 271 S.E.2d 123, 129 (1980).

We hold that the trial court did not abuse its discretion when it concluded that Juror X possessed a sufficient understanding of English to be "impartial" and that her service on the jury did not "probably cause injustice" to appellant. Thus, its denial of appellant's motion for a mistrial was not erroneous.

The trial court's conclusion that Juror X was not incapable of substantially understanding the evidence and arguments presented at trial is supported by the record.  In response to the trial court's questions, Juror X stated that she works at a hotel in Washington where she regularly communicates with people in English.  She stated that she reads English more than she writes it and that she reads newspapers.  Juror X did state that another juror translated "some things" for her; however, Juror X

had no apparent problem understanding the trial court's questions, and her answers were intelligent and responsive. These facts provided the trial court with an adequate basis to conclude that Juror X was sufficiently competent to render an impartial verdict based on the evidence and law.

We disagree with appellant's argument that because at least one other juror translated "some things" to Juror X, Juror X's presence on the jury probably caused injustice. Appellant had the burden of establishing that Juror X's service on the jury would "probably cause injustice" to him. Code § 8.01-352(B). Because the record does not indicate the degree of assistance that the other jurors provided to Juror X, we cannot say that the trial court erred when it concluded that appellant had failed to meet his burden of proof.

Finally, appellant argues that the trial court committed reversible error when it used leading questions to rehabilitate Juror X after doubts arose about her ability to understand English. We disagree.

The method in which jurors are examined by a trial court or the parties' counsel may impact the trial court's ability to determine a juror's qualification to serve. See McGill v. Commonwealth, 10 Va. App. 237, 242, 391 S.E.2d 597, 600 (1990). Subject to limitations imposed by statutes or rules of court, the manner of examining jurors is within the trial court's discretion. See id. at 241, 391 S.E.2d at 600 (citation

omitted).  However, manifest error may arise from the use of a selection procedure which does not result in a fair and impartial jury.  See id.

Generally, the evidence that a juror possesses the requisite qualifications for jury service must emanate from the juror "uninfluenced by persuasion or coercion" and "unsuggested by leading questions posed to him or her."  Educational Books, Inc. v. Commonwealth, 3 Va. App. 384, 389, 349 S.E.2d 903, 907 (1986) (citations omitted).  It is well established that once a prospective juror has indicated a bias or prejudice against a party, he or she may not be rehabilitated for service based solely upon leading questions that suggest a desired response.  See Griffin v. Commonwealth, 19 Va. App. 619, 625, 454 S.E.2d 363, 366 (1995) (citing Foley v. Commonwealth, 8 Va. App. 149, 159-60, 379 S.E.2d 915, 921, aff'd en banc, 9 Va. App. 175, 384 S.E.2d 813 (1989)).  However, no statutes, rules of court, or cases set forth the manner of rehabilitation for a juror whose proficiency with English, instead of objectiveness, has been challenged.

We hold that the trial court's manner of questioning Juror X to ascertain her ability to understand English was not an abuse of discretion because the evidence of her proficiency came from the degree of her responsiveness to the questions.  No evidence suggests that her responsiveness was tainted by coercion.  Although the record indicates that the trial court used some

leading questions to inquire about Juror X's use of English in her everyday life, the trial court did not rely exclusively on this form of interrogation to make its determination.  The transcript of the exchange between the trial court and Juror X indicates that the trial court did ask some open-ended questions and that some of Juror X's comments were unsolicited by the trial court.  Furthermore, most of Juror X's responses to the trial court's questions that <u>were</u> leading were more than just one-word affirmative responses.

Moreover, unlike in the context of examining a juror for bias or prejudice, leading questions are not devoid of usefulness when used to determine a juror's proficiency with English.  When inquiring about a juror's ability to comprehend the English language, the fluidity and intelligence of the juror's response to leading questions provides some indication of his or her ability to understand the spoken word, which is a component of the requisite language skills necessary to qualify as an impartial juror.  In this case, Juror X's responses to the trial court's combination of leading and open-ended questions provided the basis for its conclusion that

> her understanding of what I said seemed to me
> to be very good.  And her responses were
> directly to the statements that I made.  And
> I had no reason to believe at all that she
> did not understand me.

For the foregoing reasons, we affirm the conviction of habitual petit larceny.

Affirmed.